IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

TYLER DIVISION

| | | |
|---|---|---|
| JAMES PRESTON BALES, #02053878 | § | |
| VS. | § | CIVIL ACTION NO. 6:20cv181 |
| DIRECTOR, TDCJ-CID | § | |

REPORT AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE

Petitioner James Preston Bale, a prisoner confined within the Texas Department of Criminal Justice (TDCJ) proceeding *pro se*, filed this petition for a writ of habeas corpus pursuant to § 2254 challenging his Smith County, Texas, conviction. The petition was referred to the undersigned United States Magistrate Judge for findings of fact, conclusions of law, and recommendations for the disposition of the case. For the foregoing reasons, Petitioner Bales's petition should be denied, and the case should be dismissed with prejudice.

**I. Procedural History**

On February 4, 2016, after a jury trial, Bales was sentenced to life imprisonment for one count of murder through the use of a deadly weapon—a bat, (Dkt. #18-49, pg. 10). Bales argued at trial that he did so in self-defense, but the jury found him guilty. Bales filed a direct appeal, and the appellate court affirmed the conviction. *See Bales v. State*, 2017 WL 511891, at *1 (Tex.App.—Tyler, 2017, pet. ref'd). The Texas Court of Criminal Appeals denied his petition for discretionary review on May 24, 2017. Bales filed a state habeas application, which was denied on February 12, 2020 without a written order on the findings of the trial court and on the court's own review. This timely federal petition followed.

1

## II. Factual Background

The appellate court explained the facts of the case as follows:

On March 6, 2015, Appellant struck Bias Lott on the head with a baseball bat. Lott died from his injuries the next day. Following an investigation, Appellant was arrested and charged with murder.

At trial, Appellant claimed that he acted in self-defense because Lott was holding a knife. The trial court determined that a fact issue had been raised and included instructions regarding self-defense in its charge to the jury. The jury found Appellant "guilty" as charged in the indictment and sentenced Appellant to life in prison. This appeal followed.

*Bales*, 2017 WL 511891, at *1.

## III. Bales's Habeas Claims

Bales presents many claims for relief. He argues that the trial court (1) denied his right to jury representative of a fair cross-section of the community; and (2) denied him his due process rights as a result of the State's closing argument. He also claims that two witnesses, Detectives Martin and Rathburn, committed perjury.

The majority of Bales's contentions concern his claims that trial counsel was constitutionally ineffective. Specifically, he maintains that trial counsel was ineffective for failing to (1) object to the use of leg restraints; (2) object to a biased jury; (3) properly object to Exhibit 70; (4) object to Detective Martin's expert testimony; (5) impeach the two Detectives; (6) cross-examine Ms. Collinsworth; (7) object to a charge on the failure to retreat; (8) pursue a defense of real property instead of personal property; (9) pursue a defense of a third person; (10) request a jury instruction on the offense of manslaughter; (11) object to improper closing arguments; (12) advise him to proceed to trial rather than accept a plea bargain; and (13) making numerous cumulative errors. Finally, Bales argues that appellate counsel was ineffective for failing to raise the issue of failing to retreat.

## IV. Respondent's Answer and Bales's Response

After being ordered to do so, Respondent filed an answer, (Dkt. #19), addressing the petition. Respondent urges this Court to dismiss Bales's petition because it is without merit. Bales filed a response, (Dkt. #26). In his response, Bales addresses Respondent's answer on many of his claims—and also insists that this Court reject the facts outlined in the appellate court's opinion affirming his conviction. He also contends that an evidentiary hearing is required because the state court refused him an opportunity to "develop the facts." He also repeatedly asserts that the Respondent merely "regurgitated" the state habeas court's findings of fact and conclusions of law.

## V. Standard of Review

The role of federal courts in reviewing habeas petitions filed by state prisoners is exceedingly narrow. A prisoner seeking federal habeas corpus review must assert a violation of a federal constitutional right; federal relief is unavailable to correct errors of state constitutional, statutory, or procedural law unless a federal issue is also present. *See Lowery v. Collins*, 988 F.2d 1364, 1367 (5th Cir. 1993); *see also Estelle v. McGuire*, 503 F.3d 408, 413 (5th Cir. 2007) ("We first note that 'federal habeas corpus relief does not lie for errors of state law.'") (internal citation omitted). When reviewing state proceedings, a federal court will not act as a "super state supreme court" to review error under state law. *Wood v. Quarterman*, 503 F.3d 408, 414 (5th Cir. 2007).

Federal habeas review of state court proceedings is governed by the Antiterrorism and Effective Death Penalty Act (AEDPA) of 1996. Under the AEDPA, which imposed several habeas corpus reforms, a petitioner who is in custody "pursuant to the judgment of a State court" is not entitled to federal habeas relief with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—

1. resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established law, as determined by the Supreme Court of the United States; or

2. resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings.

28 U.S.C. § 2254(d). The AEDPA imposes a "highly deferential standard for evaluating state court rulings," which demands that federal courts give state court decisions "the benefit of the doubt." *See Renico v. Lett*, 559 U.S. 766, 773 (2010) (internal citations omitted); *see also Cardenas v. Stephens*, 820 F.3d 197, 201-02 (5th Cir. 2016) ("Federal review under the AEDPA is therefore highly deferential: The question is not whether we, in our independent judgment, believe that the state court reached the wrong result. Rather, we ask only whether the state court's judgment was so obviously incorrect as to be an objectively unreasonable resolution of the claim."). Given the highly deferential standard, a state court's findings of fact are entitled to a presumption of correctness and a petitioner can only overcome that burden through clear and convincing evidence. *Reed v. Quarterman*, 504 F.3d 465, 490 (5th Cir. 2007).

To show that trial counsel was ineffective, Bales must demonstrate both deficient performance and ensuing prejudice. *See Strickland v. Washington*, 466 U.S. 668 (1984). In evaluating whether an attorney's conduct was deficient, the question becomes whether the attorney's conduct fell below an objective standard of reasonableness based on "prevailing norms of practice." *See Loden v. McCarty*, 778 F.3d 484, 494 (5th Cir. 2016).

Moreover, to establish prejudice, the petitioner must show that there is a reasonable probability that—absent counsel's deficient performance—the outcome or result of the proceedings would have been different. *Id.*; *see also Reed v. Stephens*, 739 F.3d 753, 773 (5th Cir. 2014) (quoting *Strickland*, 466 U.S. at 687)). It is well-settled that a "reasonable probability" is one that is sufficient to undermine confidence in the outcome of the proceedings. *Strickland*, 466

U.S. at 694.  Importantly, the petitioner alleging ineffective assistance must show both deficient performance and prejudice.  *See Charles v. Stephens*, 736 F.3d 380, 388 (5th Cir. 2013) ("A failure to establish either element is fatal to a petitioner's claim.") (internal citation omitted).  Given the already highly deferential standard under the AEDPA, establishing a state court's application whether counsel was ineffective "is all the more difficult." *Harrington v. Richter*, 562 U.S. 86, 105 (2011); *see also Charles*, 736 F.3d at 389 ("Both the *Strickland* standard and the AEDPA standard are highly deferential, and when the two apply in tandem, review is doubly so.") (internal quotations and citation omitted).

## VI. Discussion and Analysis

As Respondent indicates, Bales's petition should be denied. He failed to demonstrate that the state court's adjudication of his claims was unreasonable or contrary to federal law.

### 1. Claims of Trial Court Error

The United States Court of Appeal for the Fifth Circuit has repeatedly held that claims of trial court error may justify federal habeas relief if the error "is of such magnitude as to constitute a denial of fundamental fairness under the due process clause." *See Krajcovic v. Director*, 2017 WL 3974251 at *6 (E.D. Tex. June 30, 2017) (quoting *Skillern v. Estelle*, 720 F.2d 839, 852 (5th Cir. 1983)); *see also Brecht v. Abrahamson*, 507 U.S. 619, 637-38 (1993) (To be actionable in federal court, the trial court error must have "had substantial and injurious effect or influence in determining the jury's verdict.").  The petitioner must also show that "there is more than a mere possibility that [the error] contributed to the verdict. It must have had a substantial effect or influence in determining the verdict." *Engle v. Lumpkin*, 33 F.4th 783, 796 n.37 (5th Cir. 2022) (quoting *Woods v. Johnson*, 75 F.3d 1017, 1026 (5th Cir. 1996)).  In other words, Bales must show that he was prejudiced by the purported trial court errors.

*a. Fair Cross-Section Requirement*

Bales first argues that his rights were denied because his jury panel did not represent a "fair cross-section of [the] community because Hispanics were underrepresented in venire panel," (Dkt. #1, pg. 6). He explains that his venire panel consisted of 90 potential jurors, composing of three Hispanic jurors. Bales asserts that the Census Bureau's data in 2016 shows that Hispanics represent 19.2% of the Smith County population but were "underrepresented in [his] venire with only a 3.3% presence"—resulting in a disparity of 15.9% *Id.* at pg. 7.

The state habeas court rejected this claim. In doing so, the state habeas court entered the following findings of fact and conclusions of law:

13. The fair cross-section requirement is a means of assuring, "not a representative jury (which the Constitution does not demand), but an impartial jury (which the Constitution does demand)." *Holland v. Illinois*, 493 U.S. 474, 480 (1990).

14. To establish a prima facie violation of the fair cross-section requirement, a defendant must show that the: (1) group alleged to be excluded is a distinctive group in the community; (2) representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community; and (3) under-representation is due to systemic exclusion of the group in the jury selection process. *Duren v. Missouri*, 439 U.S. 357, 364 (1979).

15. Applicant has satisfied the first *Duren* prong by showing that the group that was allegedly excluded is a distinctive group in Smith County.

16. Although the number of Hispanics on the venire raises an inference of unfairness, Applicant failed to satisfy the second *Duren* prong because he has not shown that the proportion of Hispanics who were eligible for jury duty (registered voters and those with driver's licenses and ID cards) were similar to 19.2%, the overall percentage of Hispanics in Smith County. *Pondexter v. State*, 942 S.W.2d 577, 580-81 (Tex.Crim.App. 1996).

17. Applicant has failed to make any showing whatsoever that the venire in this case contained disproportionately few Hispanics because they were systematically excluded. Therefore, the third *Duren* is not satisfied.

18. Applicant failed to show that Hispanics were systematically excluded from the jury selection process in Smith County. Consequently, his first ground for relief should be denied.

Dkt. #18-48, pg. 2-3.

The state habeas court's findings and conclusion of law are entitled to a presumption of correctness on federal habeas review and Bales has the burden of overcoming this presumption. *See Carter v. Collins*, 918 F.2d 1198, 1202 (5th Cir. 1990).

Title 28 U.S.C. § 2254(e)(1) provides the following:

In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.

Under this statute, then, only one avenue exists in which a federal court can ignore state fact findings: When the petitioner rebuts the presumption of correctness by clear and convincing evidence. Because the court denied relief on the merits of Bales claims, he is bound by 28 U.S.C. § 2254 and must show that the state court's adjudication of his claims resulted in a decision which was contrary to or involved an unreasonable application of clearly established federal law—as established by the Supreme Court, or resulted in a decision based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. *See Rivera v. Quarterman*, 505 F.3d 349, 356 (5th Cir. 2007).

Here, however, Bales failed to overcome the presumption of correctness. The Sixth Amendment guarantees a criminal defendant the right to have his jury chosen from a venire or panel representing a fair cross-section of the community. *Taylor v. Louisiana*, 419 U.S. 522, 527-30 (1975). In *Taylor*, the Supreme Court cited its long line of equal protection cases outlawing the purposeful exclusion of racial and ethnic groups from service on grand and petit juries in support of its interpretation of the Sixth Amendment's fair cross section requirements.

As both Respondent and the state court observed, to present a prima facie case of a violation of the fair cross-section requirement, the defendant must show that (1) the group alleged to be

excluded is a distinctive group; (2) the representation of this group in venires from which juries are selected is not fair and reasonable to the number of such persons in the community; and (3) this underrepresentation is due to the systemic exclusion of the group in the jury selection process. *Duren*, 439 U.S. at 364. *Duren* does not require that "juries actually chosen must mirror the community." *Taylor*, 491 U.S. at 538.

On habeas review, the petitioner has the burden to show that the cause of the underrepresentation is the result of systematic exclusion or "inherent in the particular jury-selection process utilized." *Duren*, 439 U.S. at 366; *United States v. Aponte-Suarez*, 905 F.2d 483, 492 (1st Cir. 1990). The petitioner must "demonstrate not only that the distinctive group is not adequately represented in his own jury venire, but also that this is the general practice of other venires." *Vernon v. Davis*, 2017 WL 1354150, at *4 (N.D. Tex. Apr. 13, 2017) (citing *Timmel v. Phillips*, 799 F.2d 1083, 1083 (5th Cir. 1986)).

Here, Bale offers nothing other than blanket statistics and his own bald assertions to support his claim that the representation of Hispanics on his jury was not representative of the Smith County population. By arguing that his own jury was only 3.3% Hispanic, without more, Bales is relying solely on the composition of his jury. *See, e.g.*, *Timmel*, 799 F.2d at 1086 ("Timmel must demonstrate, then, not only that women were not adequately represented on his jury venire but also that this was the general practice in other venires."). In other words, he neither presents the selection process of a number of jury venires over a period of time nor any persuasive evidence— statistical or otherwise—demonstrating the degree of underrepresentation or systematic exclusion of Hispanic persons on his jury. Bales failed to also show that Smith County's procedures were inherently excluding Hispanic persons from venire panels. *See Mass v. Quarterman*, 446 F. Supp.2d 671, 695 (W.D. Tex. 2006) ("The fundamental deficiency in petitioner's 'fair cross-

section' claim herein is that petitioner has alleged absolutely no specific facts showing the under-representation of Blacks on his particular jury venire was the result of any systemic exclusion of Blacks from petit jury service in Bexar County."). The claim should be dismissed, as the state court's rejection of this claim was not unreasonable.

Bales urges this Court to reject the state habeas court's findings of fact and conclusions of law. He maintains in his reply that his failure to present satisfactory evidence "is through no fault of his own," as he is proceeding pro se and informed the state habeas court of his pro se status. Bales explains that if he were afforded an evidentiary hearing during his state habeas proceedings, he would satisfy the remaining *Duren* factors—and that the failure to conduct an evidentiary hearing shows that the state habeas court's findings are unreasonable "because the fact-finding process itself was defective," (Dkt. #26, pg. 9).

Moreover, Bales maintains that he presented evidence to the state habeas court in the form of "juror information cards which revealed only three (3) Hispanic jurors on the venire panel." *Id*. Thus, in rejecting this claim, the state habeas court's "determination was unreasonable and not at all supported by the evidentiary record." *Id*. But, again, this argument relies solely on the composition of his own jury—not the general composition of jury venires in Smith County. Bales offers nothing, other than his own beliefs, that Hispanic persons were underrepresented on his jury—and offers no specific facts showing that any underrepresentation of Hispanic persons was a result of systematic exclusion. This claim should be denied.

### b. Prosecutorial Misconduct

Bales next claims that he "was denied due process by prosecutorial misconduct in the State's closing arguments in guilt/innocence and punishment," and that the prosecution presented perjured testimony. Specifically, he maintains that during the guilt/innocence phase, the

prosecution improperly remarked: (1) "I think Mr. Ladd's memory of the evidence is about as disjointed as [Petitioner's] version of events in the first place"; (2) "… I'll start with the fishing reels, because I think … that's the most ridiculous of the defenses …," which is a personal opinion about his trial counsel;  and (3) a misstatement of law and arguing contrary to the court's charge. Bales also contends that the prosecution improperly (1) argued that sudden passion does not apply; (2) applied "parole law" directly to him, his daughter, age, and eligibility of parole.

Bales raised these claims in his state habeas application, which was ultimately denied. In assessing these claims, the state habeas court entered the following:

20. The scope of closing arguments is limited to (1) summation of the evidence; (2) reasonable deductions from the evidence; (3) answers to an argument of opposing counsel; and (4) pleas for law enforcement. *Freeman v. State*, 340 S.W.3d 717, 727 (Tex.Crim.App. 2011).

21. Arguments that fall outside the parameters for closing arguments are typically improper. *Dinkins v. State*, 894 S.W.2d 330, 357 (Tex.Crim.App. 1995).

22. During closing arguments for the trial on the merits, the prosecutor stated, "I think Mr. Ladd's memory of the evidence is about as disjointed as Mr. Bales's version of events is in the first place." Applicant argues that this comment was improper.

23. "Argument that strikes at a defendant over the shoulders of defense counsel is improper." *Davis v. State*, 329 S.W.3d 798, 821 (Tex.Crim.App. 2010).

24. The State's comment, regarding trial counsel's memory, was (1) made in response to trial counsel's closing argument; (2) aimed at the defense's efforts to minimize certain evidence and to focus strongly on aspects that were beneficial to the defense; and (3) not meant to be taken as a legitimate attempt to discredit trial counsel's actual capacity to remember the evidence that was presented at trial. Therefore, the State did not properly strike at Applicant over the shoulders of defense counsel.

25. During closing arguments for the trial on the merits, the prosecutor described Applicant's defense that he was protecting his personal property as "the most ridiculous" of all the defenses.

26. The "most ridiculous" comment was a proper response to defense counsel's preceding argument. *McDuffie v. State*, 854 S.W.2d 195 (Tex. App.—Beaumont, pet. ref'd).

27. During closing arguments for the trial on the merits, the prosecutor informed the jury that the self-defense and defense of property instructions were included in the charge because "when they throw that out there, the Court has to give you the law. But because the Court gives you the law, it doesn't make it reasonable. It doesn't even make it even close to common sense.  It's absolutely ridiculous."

28. A prosecutor may properly advise the jury during closing arguments that any relevant testimony raising a material fact issue will cause the trial judge to submit a charge explaining the law on that issue, so long as he does not refer to any belief of the trial court. *McClory v. State*, 510 S.W.2d 932, 934 (Tex. Crim. App. 1974).

29. During closing arguments for the punishment trial, the prosecutor argued that sudden passion did not apply in this case.

30. The comments regarding how the defensive instructions came to be included in the charge, during both the trial on the merits and the punishment trial, did not misstate the law or remark on the Court's personal beliefs. Therefore, there was nothing improper about the prosecution's explanation of how the charges came to include defensive instructions.

31.  The State did not commit prosecutorial misconduct during the closing arguments, for either the trial on the merits or the punishment trial. Applicant's second ground for relief is without merit, and it should be overruled.

Dkt. #18-48, pg. 521-23. As mentioned, state habeas court's findings and conclusion of law are entitled to a presumption of correctness on federal habeas review and Bales has the burden of overcoming this presumption.

Bales has not overcome this burden. The standard for granting federal habeas relief because of alleged prosecutorial misconduct is "the narrow one of due process, and not the broad exercise of supervisory power." *Darden v. Wainwright*, 477 U.S. 168, 181 (1986).  To prevail on such claims, the petitioner must show that the prosecutor's actions were so egregious as to tender the trial fundamentally unfair. *See Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974). His actions must have "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Darden*, 477 U.S. at 181.  It is not enough that his actions "were undesirable or even universally condemned." *Id.*  Crucially, the Fifth Circuit has held that the test to determine whether a trial is fundamentally unfair "is whether there is a reasonable probability that the verdict might

have been different had the trial been properly conducted." *Rogers v. Lynaugh*, 848 F.2d 606, 609 (5th Cir. 1988).

As the Respondent indicates, a petitioner raising a claim of prosecutorial misconduct carries a substantial burden. *See United States v. Diaz-Cameron*, 915 F.2d 951, 956 (5th Cir. 1990) ("This Court recognizes, however, that a criminal defendant bears a substantial burden when attempting to demonstrate that improper prosecutorial comments constitute reversible error."). Moreover, "[a] prosecutor's improper argument will, in itself, exceed constitutional limitations only in the most egregious cases." *Ortega v. McCotter*, 808 F.2d 406, 410 (5th Cir. 1987) (internal citations omitted). In determining whether a prosecutor's comments affected a petitioner's right to a fair trial, courts consider three factors: (1) the magnitude of the prejudicial effect of the remarks, (2) the efficacy of any cautionary instruction, and (3) the strength of the evidence of the petitioner's guilt. *United States v. Floyd*, 343 F.3d 363, 369 (5th Cir. 2003) (citing *Diaz-Cameron*, 915 F.2d at 956).

Here, a review of the entire record demonstrates that all of the prosecutor's remarks to which Bales complains were within the realm of permissible argument. He has not shown that any comment substantially affected his right to a fair trial—particularly given the strength of the State's case. Bales, in his response, argues that the prosecutor misstated the law on "sudden passion," which ran afoul the jury instructions because the court decided the instruction was proper. The prosecutor argued that sudden passion did not apply because the evidence presented failed to establish adequate cause or provocation. A prosecutor's analysis—or reasonable application of the law to the facts presented at trial—is not prosecutorial misconduct. The jury was entitled to reject the defense of sudden passion. *See Evoulou v. United States*, 2022 WL 4389563, at *2 (N.D. Tex. Aug. 22, 2022) ("Evoulou has not established the prosecutor's comments were inappropriate.

12

Counsel is allowed to state his contention as to the conclusions that the jury should draw from the evidence.") (internal quotations omitted). Bales has not identified a single comment—or cumulative comments—that is egregious or rendered the trial fundamentally unfair.

Turning to Bales's argument that the prosecution presented perjured testimony, the Court notes that this claim is also without merit. Bales argues that, on direct examination, Detective Martin "committed perjury when he testified that the bruising to Lott's shoulder was consistent with a fifth hit," (Dkt. #1, pg. 8). Detective Rathbun also committed perjury "when he testified that Petitioner hit Lott across his chest." *Id*. Bales argues that the Detective's testimony about the shoulder and chest impact "is perjured because these are areas where medical intervention occurred, and not indicative of hits by Petitioner. This false testimony contributed to Petitioner's punishment." *Id*. at pg. 9.

The state habeas court entered findings of fact on this claim, which is entitled to the presumption of correctness absent clear and convincing evidence to the contrary:

33. "The Due Process [Clause] of the Fourteenth Amendment can be violated when the State uses false testimony to obtain a conviction, regardless of whether it does so knowingly or unknowingly." *Ex Parte Robbins*, 360 S.W.3d 446, 459 (Tex.Crim.App.2011). A writ applicant is not required to prove perjury; "it is sufficient that the testimony was false." *Ibid*.

34. To constitute a due-process violation, the record must show the false testimony was material, by demonstrating a reasonable likelihood that the false testimony affected the applicant's conviction or sentence. *Ex Parte Chavez*, 371 S.W.3d 200, 207 (Tex.Crim.App.2012).

35. At Applicant's trial on the merits, Detectives Ron Rathbun and Noel Martin testified that the victim's injuries indicated that Applicant struck the victim numerous times in the chest and shoulders.

36. The evidence that Applicant has provided in support of his perjury claim merely suggests than an alternative explanation for the injuries that the victim suffered to his chest and shoulders. It does not establish, by preponderance of the evidence, that the detective's testimony was false. *See Ex Parte Chabot*, 300 S.W.3d 768, 770-71 (Tex.Crim.App. 2009).

37. Because Applicant has failed to demonstrate the State used false testimony to obtain a conviction in this case, there is no need to consider the materiality of the detectives' testimony. *See Chavez*, 371 S.W.3d at 207.

Dkt. #18-48, pg. 524.  The Fifth Circuit addressed the issue of perjury in *Kutzner v. Cockrell*, 303 F.3d 333, 336 (5th Cir. 2002); *see also Giglio v. United States*, 405 U.S. 150 (1972).  A petitioner must prove that the prosecution knowingly presented or failed to correct materially false testimony during trial. 303 F.3d at 337.

Due process is not implicated by the prosecution's introduction or allowance of false or perjured testimony unless the prosecution actually knows or believes the testimony to be false or perjured. *Id*. Importantly, it is not enough that the testimony is challenged by another witness—or if it is inconsistent with prior statements. *Id*. A petitioner does not show that perjury occurred by mere contradictory statements from witnesses, inconsistencies within a witness' testimony and conflicts between reports. *See Koch v. Puckett*, 907 F.2d 524, 531 (5th Cir. 1990); *Din Tan Ho v. Thaler*, 495 F. App'x 488, 493 (5th Cir. 2012) ("It is not sufficient for Ho merely to show that the state elicited testimony of past statements that have been recanted or contradicted by testimony produced at trial.").

Here, as the state habeas court found, Bales merely provides an alternative explanation for the victim's injuries. In his reply, Bales argues that "a medical intervention device, i.e., an IO needle, is the source of the bruising that Detectives Martin and Rathbun attribute to Petitioner," (Dkt. #26, pg. 17). But this is exactly what the state habeas court determined—an alternative explanation. It does not, contrary to Bales's contention, reveal that the testimony was false.

Moreover, a review of the trial transcript demonstrates that trial counsel questioned Detective Martin on cross-examination about the blood spatter. Trial counsel established that blood spatter "is when blood is projected from force," and questioned whether that force could come

from a number of items—from a foot, from gravity, and from a bat potentially. *See* Dkt. #18-17, pg. 52. By convicting Bales, the jury rejected these alternative theories, which necessarily shows that Bales cannot demonstrate that the outcome would have been different if another explanation was presented.

This Court will not disturb the jury's credibility determinations. *See U.S. v. Millsaps*, 157 F.3d 989, 994 (5th Cir. 1998) (explaining that "[i]t is the sole province of the jury, and not within the power of this Court, to weigh conflicting evidence and evaluate credibility of witnesses. The jury has the unique role to judge the credibility and evaluate the demeanor of witnesses and to decide how much weight should be given to their testimony.") (internal quotations omitted). Because Bales merely proffers an alternative explanation for the victim's injuries—and fails to demonstrate that the Detectives' testimony was false—he has wholly failed to overcome the presumption of correctness afforded to the state habeas court's findings. This claim should be dismissed.

### 2. Claims that Counsel was Ineffective

Bales next raises many claims of ineffective assistance of trial counsel and appellate counsel. He, however, neither showed deficient performance nor ensuing prejudice—and, as a result, his claims should be dismissed. Bales further failed to demonstrate that the state court's rejection of these claims was unreasonable or contrary to federal law.

#### a. Failure to Object

Bales maintains that trial counsel was ineffective for failing to object to (1) the use of leg restraints, (2) a biased jury panel, (3) exhibit 70, (4) Detective Martin's expert testimony, (5) Detective Rathbun's opinion testimony, (6) the jury charge on failure to retreat, and (7) the State's closing argument.

First, Bales contends that trial counsel failed to object to "the trial court's use of a leg collar restraint on Petitioner for the entirety of trial, which interfered with Petitioner's communication with counsel, distracted him and disturbed his mental process in assisting counsel due to physical, mental and emotional discomfort," (Dkt. #1, pg. 8).

Trial counsel provided an affidavit, (Dkt. #18-54, pg. 137), to the state habeas court opposing all of Bales's claims of his alleged ineffective assistance. With respect this leg-restraint and biased-jury claims, Mr. Ladd offered the following:

> This Writ of Habeas Corpus is the first time either of these two "issues" have been brought to the attention of Mr. Ladd. Mr. Bales, prior to trial and outside the presence of the venire, was instructed by the Honorable Judge Kennedy as to the use of the leg collar and how to conceal it during trial. Defendant Bales acknowledged and understood without any complaint, nor expressing any dissatisfaction or objection to his trial counsel. Mr. Bales testifies that the leg collar interfered with his ability to communicate with counsel, caused him a distraction and disturbed his mental process in assisting his counsel at trial. Again, Mr. Ladd does not recall a single situation in which we were unable to communicate due to the leg brace, nor was he informed by Mr. Bales that the leg collar was such a distraction that he could not communicate or assist in the defense of his case during trial. With respect to the "exclusion of Hispanics from the venire," again, counsel has no control, as to who is summoned for jury duty in Smith County for a particular day. Furthermore, Defendant Bales certainly did not express such an objection to the lack of Hispanic-Americans on the panel at the time of trial, nor did he express such an affinity for Hispanic-American jurors. This the first time this has been brought to the attention of Mr. Ladd.

Dkt. #18-54, pg. 472. The state habeas court found that Bales's complaints regarding the leg restraints "are unsupported by any evidence and are insufficient to sustain his burden of proof," (Dkt. #18-48, pg. 525).

Specifically, the state habeas court highlighted the trial court's discussion with Bales before trial regarding the restraints. Bales only remarked, "I have a hard time walking in this, Your Honor, but I understand. I understand I'm not going to be up walking." *Id*. The state habeas court determined that Bales's contentions were not credible.

Trial counsel is not ineffective for failing to raise a meritless or futile objection. *See Emery v. Johnson*, 139 F.3d 191, 198 (5th Cir. 1997) (explaining that the "failure to assert a meritless objection cannot be grounds for a finding of deficient performance."). As Respondent highlights, even if counsel had a basis to object, counsel is not ineffective for failing to do so if the failure was trial strategy. *See Burnett v. Collins*, 982 F.2d 922, 930 (5th Cir. 1993).

Here, Bales has not overcome the state court's presumption of correctness that his leg-restraint claims are not credible. A review of the trial transcript confirms that when questioned about his leg restraint confirms that Bales raised no objection to the use of restraints—as he merely stated that he had a hard time walking but understood that he would not be walking around during trial, (Dkt. #18-15, pg. 12). While Bales insists that the state habeas court's reliance on Mr. Ladd's affidavit is "incongruent" with the facts of his case, the trial transcript shows otherwise. Bales has not shown that an objection to the use of restraints would have been meritorious—and wholly failed to demonstrate that the use of restraints prejudiced him.

Turning to Bales's complaints regarding the racial makeup of the venire panel, for reasons previously explained, this claim is without merit. Bales merely complains about the composition of his jury rather than jury panels, in general, for Smith County. He also failed to offer specific facts showing that any underrepresentation of Hispanic persons was a result of systematic exclusion. In these ways, he has not shown that any objection to the panel on this basis would have been meritorious.

Next, Bales contends that trial counsel was ineffective for failing to properly object to Exhibit 70—autopsy photographs. The state habeas court entered the following findings of fact and conclusions of law:

61. First, Applicant complains that his trial counsel was ineffective because he made a 403 objection to a group of autopsy photos (Exhibits 56-70), rather than singling out the most objectionable photo, Exhibit 70.

> a. Applicant's trial counsel clearly objected to the autopsy photos, arguing that they would inflame the jury and did not reflect how the victim looked at the scene.

> b. Applicant has not provided any authority showing that trial counsel can be ineffective for lodging a clear objection that applies to a group of exhibits, rather than narrowing the objection to a single exhibit.

> c. Applicant did not receive ineffective assistance of counsel based on the failure to lodge a single objection to Ex. 70.

Dkt. #18-48, pg. 527.

Here, once again, Bales failed to demonstrate that any further objection would have been meritorious. Because trial counsel did, indeed, object to the photographs, Bales cannot show that counsel was deficient for failing to object. Moreover, he failed to explain how trial counsel's actual objection was not proper or somehow deficient. The trial transcript shows that trial counsel lodged an objection to the autopsy photographs—arguing that the photographs were prejudicial, not reflective of the scene, and were being offered to inflame the jury. The Court overruled the objection after performing the Rule 403 balancing test. Bales failed to demonstrate that the state habeas court's rejection of this claim was unreasonable or contrary to federal law.

With respect to Detective Martin and Rathbun's testimony, Bales maintains that trial counsel was ineffective for failing to "object to Detective Martin's lack of blood spatter qualifications or more to strike said testimony," and for failing to object to "Detective Rathbun's police opinion testimony that Petitioner's case was not self-defense," (Dkt. #1, pg. 10). The state habeas court found the following:

62. Second, Applicant alleges that trial counsel was ineffective for failing to challenge the expert qualifications of the State's blood spatter witness.

a. A witness who is qualified as an expert by skill, experience, training, or education may provide opinion testimony if his knowledge will help the jury determine a fact issue. Tex. Evid. R. 702.

. . . .

f. Detective Martin had years of experience as a crime scene investigator, and his duties included analyzing bloodstains. Consequently, his experience was sufficient for the Court to find that he had "specialized knowledge or additional insight" to the extent that qualifying him to testify as an expert witness would be helpful to the jury.

g. To establish deficient performance based on the failure to object, Applicant must demonstrate that the Court would have erred in overruling the objection. *Ex Parte Cockrell*, 424 S.W.3d 543, 546 (Tex. Crim. App. 2014).

h. Applicant has not demonstrated that the Court would have erred by overruling an objection to Detective Martin's qualifications as an expert witness, if an objection had been made. Consequently, he has not shown that he received ineffective assistance of counsel based on the failure to object to the State's blood spatter expert.

Dkt. #18-48, pg. 528.

Here, Bales failed to demonstrate that any objection to Detective Martin's expert testimony would have been meritorious. A review of the trial transcript reveals that Detective Martin testified that he was a crime scene investigator, with the title of "criminalist," (Dkt. #18-17, pg. 11). He explained that he analyzes bloodstain patterns and process evidence, with approximately 28 years of experience. *Id*. Detective Martin testified to his specific training and that he has testified previously as an expert throughout the State of Texas. *Id*. Given Detective Martin's training, experience, and skills, Bales cannot demonstrate that an objection to his qualification as an expert would have been meritorious—thus, he has not overcome the presumption of correctness afforded to the state habeas court.

Bales further contends that trial counsel was ineffective for failing to object to Detective Rathbun's opinion testimony concerning lack of self-defense. The state habeas court determined

19

that Bales failed to show that counsel was ineffective on this basis because "[t]he State's expert witness did not express his opinion on pure question of law. Rather, he spoke generally about how he investigated and resolved claims of self-defense." *Id*. at pg. 529.

In response, Bales insists that "Respondent did just as Smith County District Attorney's office did in addressing this claim, attempted 'cloaking' of the testimony by surrounding it with verbiage—something pointed out by Petitioner during the state habeas proceeding," and remarks that the offending testimony occurred when Detective Rathbun stated, "…But in this particular case, it didn't turn out that way," (Dkt. #26, pg. 24).

Under Texas law, if a witness is not testifying as an expert, opinion testimony is limited to an opinion that is (1) rationally based on the witness's perception and (2) helpful to clearly understanding the witness's testimony or to determining a fact in issue. *See* Tex. R. Evid. Rule 701. A lay witness is permitted to testify to his or her observations that do not require expertise and are not based on a scientific theory. *See Hatchcock v. Hankook Tire Am. Corp.*, 330 S.W.3d 733, 747 (Tex. App.—Texarkana 2010, no pet.). Moreover, as mentioned, "[a] witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the expert's scientific, technical, or specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue." Tex. R. Evid. Rule 702.

Here, the trial transcript illustrates that Detective Rathbun testified that he was a detective within the Smith County Sheriff's Office for approximately thirteen years and a certified peace officer, (Dkt. #18-17, pg. 165). He began explaining how he began investigating this crime, and was asked whether in the course of his experience investigating homicides he ever investigated homicides wherein someone claimed self-defense—to which Detective Rathbun stated,

"certainly." *Id*. at pg. 170. He testified that, when a defendant claims self-defense, it is the job of police officers to investigate rather than "just stop there and take their [the defendant's] word for it." *Id*. at pg. 171. Detective Rathbun then testified that police officers want to know what happened, and that sometimes self-defense is "exactly what happened. But in this particular case, it didn't turn out that way." *Id*.

As the state habeas court determined, however, this comment was in response to general questions about investigations and not a legal conclusion. Instead, Detective Rathbun was testifying to law enforcement investigations in general—particularly that law enforcement investigates a defendant's claim of self-defense. Detective Rathbun highlighted his experience as a law enforcement officer and testified that he "certainly" investigated cases of self-defense. Because the comment to which Bales complains was a response to the State's questions of his experiences with investigations in general—and not a legal conclusion—Bales has not shown that an objection on this basis would have been meritorious. Even if Bales established that this was a meritorious basis to object, given Mr. Ladd's affidavit, he has not shown that the failure to do so was not sound trial strategy. This claim should be dismissed.

Bales further argues that counsel was ineffective for failing to object to the State's "improper" closing argument. He repeats his claim that the prosecutor misstated the law and argued "contrary" to the charge on sudden passion. For reasons explained above, such objection would have been frivolous. The prosecution was applying the facts presented to the law of self-defense, asserting that sudden passion did not apply because the evidence presented failed to establish adequate cause or provocation. This claim should be dismissed because Bales failed to show that an objection to the closing argument on this basis would have been meritorious.

21

Finally, Bales insists that counsel was ineffective for failing to object to the jury charge on the failure to retreat. The following jury instruction was provided to the jury:

```
16   Failure to Retreat
17                   A person who has a right to be present at a
18   location whether a person uses -- let me start that
19   over.  Failure to retreat.  A person who has a right to
20   be present at a location where the person uses deadly
21   force against another is not required to retreat before
22   using deadly force in self-defense if both --
23                   1.  the person with the right to be present
24   did not provoke the person against whom the deadly force
25   is used; and

1                   2.  the person is not engaged in criminal
2    activity at the time the deadly force is used.
3                   Therefore, in deciding whether the State
4    has proved that the defendant did not reasonably believe
5    his use of deadly force was necessary, you must not
6    consider any failure of the defendant to retreat that
7    might be shown by the evidence if you find both --
8                   1.  the defendant did not provoke
9    Bias Lott, the person against whom the deadly force was
10   used -- excuse me.  The person did not provoke
11   Bias Lott, the person against whom the defendant used
12   deadly force; and
13                   2.  the defendant was not engaged in
14   criminal activity at the time he used the deadly force.
15                   If you do not find both 1 and 2, you may
16   consider any failure of the defendant to retreat that
17   might be shown by the evidence in deciding whether the
18   defendant reasonably believed his use of deadly force
19   was necessary.
```

22

Dkt. #18-19, pg. 28. The state habeas court determined that this claim was meritless, finding that Ms. Collinsworth's testimony concerning Bales's use of methamphetamine prior to the murder raised a material fact issue that he engaged in criminal activity at the time he murdered the victim.

Here, a review of Ms. Collinsworth's testimony confirms that this jury instruction was not erroneous. She testified extensively about Bales's use of methamphetamine on the evening of the murder. Thus, evidence was presented concerning Bales's use of a controlled substance—an illegal activity—at the time of the murder. Accordingly, any objection to this instruction on this basis would have been meritless and counsel cannot be ineffective for failing to raise a meritless objection. This claim should be dismissed.

### b. Failure to Impeach

Next, Bales maintains that counsel was ineffective for failing to impeach Detectives Martin and Rathbun "with State's exhibits 56, 57, and 61," (Dkt. #1, pg. 10). He asserts that these three exhibits—autopsy photographs—would show that the victim's injuries were a result of medical intervention. The record shows that trial counsel cross-examined both witnesses.

The state habeas court—in rejecting this claim—found that Bales failed to demonstrate by a preponderance of the evidence that trial counsel was deficient for failing to impeach the detectives' testimony and that he was prejudiced by the failure to impeach on these bases. Respondent argues that trial counsel likely did not want to draw the jury's attention to the gruesome autopsy photographs because "they demonstrate the awful beating Mr. Lott endured at the hands of Bales," (Dkt. #19, pg. 26).

Bales insists in his response that the autopsy photographs were already admitted into evidence and shown to the jury, as "any harm in highlighting the photos to the jury was sufficiently 'attenuated' by the fact that the photos were already in evidence," (Dkt. #26, pg. 22).

However, Bales's response illustrates the soundness of the state habeas court's rejection of this claim as well as Respondent's answer. It is well-settled that "[a] conscious and informed decision on trial tactics and strategy cannot be the basis for constitutionally ineffective assistance of counsel unless it is so ill-chosen that it permeates the entire trial with obvious unfairness." *Crane v. Johnson*, 178 F.3d 309, 314 (5th Cir. 1999) (quoting *Garland v. Maggio*, 717 F.2d 199, 206 (5th Cir. 1983)).  Counsel's strategic decisions are given heavy deference and should not be second-guessed.  *See United States v. Jones*, 287 F.3d 325, 331 (5th Cir. 2002); *see also Yohey v. Collins*, 985 F.2d 222, 228 (5th Cir. 1993) ("Given the almost infinite variety of possible trial techniques and tactics available to counsel, this Circuit is careful not to second-guess legitimate strategic choices."); *Lamb v. Johnson*, 179 F.3d 352, 358 (5th Cir. 1999) ("Informed strategic decisions of counsel are given a heavy measure of deference and will not be second guessed."). Moreover, an informed decision to forgo presenting "double-edged" evidence—one that could either help or harm a defendant—is reasonable trial strategy.  *See Hopkins v. Cockrell*, 325 F.3d 579, 586 (5th Cir. 2003) ("This Court has repeatedly denied claims of ineffective assistance of counsel for failure to present 'double edged' evidence where counsel has made an informed decision not to present it.").

Here, Bales's argument that trial counsel should have further highlighted the autopsy photographs is akin to complaining about counsel's strategy. Repeatedly highlighting gruesome photographs of the victim could have certainly harmed Bales's defense. Counsel cannot be ineffective for failing to harm his client. Furthermore, Bales has not shown that the outcome of the proceedings would have been different had counsel impeached the Detectives, as his theory that the victim's injuries were a result of medical intervention is merely an alternative explanation for the victim's injuries.

24

*c. Failure to Adequately Cross Examine*

Next, Bales asserts that trial counsel was ineffective for failing to "adequately cross-examine Jennifer Collinsworth on material matters from her grand jury testimony," (Dkt. #1, pg. 10). Mr. Ladd responded to this claim—explaining that Collinsworth was not a helpful witness to Bales—as follows:

> Counsel for Mr. Bales has to determine what is the most beneficial and effective cross-examination for each witness. Despite having a strategy before trial, every attorney who tries cases understands that theories and plans change during the life of a trial. Mr. Ladd was able to see how the jury was reacting to certain testimony and as such chose either to highlight the good points again for the jury or draw less attention to the facts that did not sit well with the jury. For example, Defendant Bales objected to Mr. Ladd's failure to cross-examine Jennifer Collinsworth on her Grand Jury testimony. Ms. Collinsworth performed poorly on the stand to say the least. The jury did not care for her and her testimony was damaging to Defendant Bales. As such, it was in his best interest to get her off the stand. There was no benefit to Mr. Bales by having her recount the testimony she gave under oath, especially for inconsistencies. Mr. Bales wanted the jury to believe Ms. Collinsworth due to her recollection of the facts from that night, so impeaching her credibility would not have assisted his defense at all.

Dkt. #18-54, pg. 473. The state habeas court determined that "trial counsel's decision not to thoroughly cross-examine Ms. Collinsworth was sound trial strategy." Dkt. #18-48, pg. 529.

A review of the trial transcript confirms the accuracy of both Mr. Ladd's affidavit and the state court's reasoning for rejecting this claim. Counsel cannot be ineffective for failing to draw the jury's attention to damaging testimony or evidence against his client. The trial transcript reveals that Ms. Collinsworth testified that she was married to Bales and that the victim would come over to their home to play darts and "hang out." Dkt. #18-17, pg. 69. She testified that they would use methamphetamine and engage in sexual activities while on methamphetamine. Ms. Collinsworth testified that on the day of the murder, she and Bales "picked up" the victim to hang out—ultimately smoking methamphetamine together. *Id.* at pg. 82. She explained that she sat with them while Bales and the victim talked, and the victim uttered a "smart-aleck" comment, "If we don't

25

kill you first." *Id*. at pg. 86. Ms. Collinsworth testified that she did not believe the comment was serious and did not ask the victim to leave, as "everyone was still getting along." *Id*. at pg. 87.

The victim and Bales then began to get ready to smoke methamphetamine through injection in the kitchen. Ms. Collinsworth informed them that she did not want to engage in sexual activity that evening, and Bales remarked that they "could still go hunting" or "do something else." All three injected methamphetamine and she testified that Bales was "high" and began looking for something to do. *Id*. at pg. 91. She explained that she and the victim then engaged in sexual activity while Bales watched.

Subsequently, Ms. Collinsworth began vacuuming the couch—and the victim and Bales began playing darts and "went through fishing tackle." The victim ultimately remarked that he "was going to take something because he wanted to," and set a bag on top of the dryer machine. Around 4:00 in the morning, she heard "a loud noise" and saw the victim on the floor but that she never heard arguing or threats. *Id*. at pg. 102. She further testified that she saw the victim "laying on the ground and [Bales] just standing there"—after hearing the silverware drawer open and then a loud noise immediately. *Id*. at pg. 105.

Ms. Collinsworth testified that if Bales wanted to leave, he just needed to turn around and go out the front door while the victim would have to "get past" Bales "to get out." She testified that Bales had a bat in his hand and she heard a holler—as well as a loud sound like a "thud," which she believed was the victim falling to the floor. *Id*. at pg. 112. She further testified that Bales told her that the victim tried to stab him, but that she did not see any knives. The victim attempted to get up, and Bales pushed him down with the bat—"to make sure he wasn't going to get up." *Id*. at pg. 116.

After a court recess, Mr. Ladd began cross-examining Ms. Collinsworth. As Mr. Ladd explained, Ms. Collinsworth's testimony on direct-examination was not helpful to the defense. She testified extensively about their drug use, sexual activities, and how she did not hear any fighting. Ms. Collinsworth testified that she saw Bales with the bat—and saw him push the victim down with the bat after he was already laying on the floor. While she remarked that something must have happened for Bales to use the bat, despite Bales's contention that the victim tried to stab him, she never saw a knife that evening. Accordingly, Mr. Ladd's decision not to draw further attention to this unfavorable testimony was reasonable, sound trial strategy. This claim should be dismissed.

### d. Defense of Real Property/Personal Property

Bales further complains that trial counsel failed to pursue a defense of land—but instead pursed the defense of personal property. He maintains that a defense of land was stronger than defense of personal property. The state habeas court rejected this claim as follows:

> a. "The theories of defense to be included in the jury charge generally fall within counsel's wide latitude to make strategic and tactical decisions." *Marlow v. State*, 886 S.W.2d 314, 317 (Tex.App.—Houston [1st Dist.] 1994 pet. ref'd).
>
> b. "Trial counsel may pursue one reasonable defensive theory and exclude others; this is within his constitutionally protected independence under *Strickland*." *Ibid*.
>
> c. Applicant has not demonstrated that his trial counsel's decision to pursue defense of personal property, in favor of defense of real property, was objectively unreasonable. He did not receive ineffective assistance of counsel on this basis.

Dkt. #18-48, pg. 530.

Here, once again, Bales failed to demonstrate that the state court's adjudication of this claim was unreasonable or contrary to federal law. Simply because the jury rejected the defense does not mean that counsel was ineffective. Moreover, as Respondent highlights, Bales reviewed the jury charge and agreed to it. This claim should be dismissed.

*e. Defense of Third Person and Manslaughter*

Bales maintains that counsel was ineffective for failing to pursue a defense of a third person and failed to secure an instruction on manslaughter. Rule 2(c) of the Rules Governing Section 2254 Proceedings in the United States District Courts states that a habeas petition must:

> (1) specify all of the grounds of relief available to the petitioner; (2) state the facts supporting each ground; (3) state the relief requested; (4) be printed, typewritten, or legibly handwritten; and (5) be signed under penalty of perjury by  the petitioner or by a person authorized to sign it for the petitioner under 28 U.S.C. §2242.

Here, Bales does not elaborate at all on these claims—and does not raise these claims in his response to Respondent's answer. The Fifth Circuit has held that "[a]bsent evidence in the record, a court cannot consider a habeas petitioner's bald assertions on a critical issue in his pro se petition (in state and federal court), unsupported and unsubstantiated by anything else contained in the record, to be of probative evidentiary value." *Ross v. Estelle*, 694 F.2d 1008, 1011-12 and n.2 (5th Cir. 1983); *see also Koch v. Puckett*, 907 F.2d 524, 530 (5th Cir. 1990).  These claims should therefore be dismissed, as his conclusory allegations do not show a basis for habeas relief.

*f. Plea Bargain*

Bales insists that counsel was ineffective for advising him to reject a plea offer for twenty-five years' imprisonment. He states that he asked trial counsel for a professional assessment of the case "on whether it was one 'fit' for trial, or should he just plead guilty," (Dkt. #1, pg. 12). Bales contends that trial counsel explained that "if he didn't try the case and just accepted the offer, he would regret it, but he would at least be guaranteed a life." *Id*. Trial counsel further advised Bales that his case was "winnable" because Bales "defended himself from a loaded dopehead in his own home." *Id*. Bales argues that he rejected the plea offer based on counsel's advice. Trial counsel responded directly to this claim in his affidavit as follows:

It is beyond comprehension that Defendant Bales has the audacity to conjure up an allegation that Mr. Ladd somehow forced or persuaded him to reject the plea offer of twenty-five years. This is nothing more than revisionist history. Not only did Mr. Bales reject the 25-year offer, but informed Mr. Ladd that he was not going to agree to any offer because this was a case of self-defense.  It might be best to look at this particular allegation in a practical manner. The undisputed facts of Mr. Bales['s] case was that he had used methamphetamines with the victim that night, engaged in group sexual activity with the victim and Jennifer Collinsworth and then struck and killed the victim with a baseball bat. Furthermore, he called the police and gave a two-hour interview, handed them the weapon and admitted to striking the victim in the head. Mr. Ladd as court appointed counsel would receive no benefit from convincing a client to take their case to trial. Mr. Bales is a grown man that was presented with an offer and he rejected it, plain and simple. This is the "lawyer's paradox": The attorney commits malpractice if their client enters a plea agreement because the defendant was forced into a plea agreement or the attorney commits malpractice if their client rejects the plea offer and receives a much more substantial sentence at trial. Mr. Bales contradicts himself in his own motion in that he openly admits this was a self-defense case, but then complains that he wasn't "allowed" to enter a plea of guilty to a murder charge. Defendant Bales did then, and to this day, continues to claim this case was self-defense, but is asking this court to allow him to enter a plea of guilty to murder. By having him enter a plea of guilty to murder, Mr. Ladd would be having him plea against his will and therefore the plea would be improper. Again, it is difficult for Defendant Bales to maintain the defense of self-defense while complaining about the inability to plea guilty to murder. The statements attributed by Mr. Bales to Mr. Ladd are total and complete fabrications. Mr. Ladd gave no recommendation to take this case to trial, especially given the facts as outlined above. To take this to trial was the decision of Mr. Bales and Mr. Bales alone.

Dkt. #18-54, pg. 474-75. The state habeas court rejected this claim, finding that his claim is contradictory.

Bales presents nothing to rebut the presumption of correctness afforded to the state habeas court. While he maintains that trial counsel failed to communicate the duty to retreat, his current claims contradict his claims on direct appeal and his steadfastness that he acted in self-defense. The bottom line is that Bales failed to present clear and convincing evidence to refute the presumption of correctness afforded to the state court. This claim should be dismissed.

### g. Appellate Counsel—Jury Charge

In his final claim, Bales argues that appellate counsel failed to "properly raise jury charge error on self-defense with regard to the trial court's inclusion of a 'failure to retreat' instruction

and an improper 'presumption' instruction," (Dkt. #1, pg. 13). The state habeas court found that

the jury instruction was not erroneous as follows:

> 89. To show ineffective assistance of appellate counsel for failing to raise a point of error, an applicant must prove (1) the decision not to raise the point was objectively unreasonable, and (2) a reasonable probability that if he had raised that particular point, he would have prevailed on appeal. *Ex parte Miller*, 330 S.W.3d 610, 623-24 (Tex.Crim.App. 2009).

> 90. The failure to retreat instruction was properly included in the charge because Jennifer Collinsworth's testimony raised a material fact issue that Applicant was engaged in criminal activity at the time he used force against the victim, through possession of a controlled substance.

> 91. Because the charge instruction regarding Applicant's failure to retreat was not erroneous, there is not a reasonable probability that Applicant would have prevailed if he appellate counsel had raise the point of error on appeal.

Dkt. #18-48, pg. 533-34. Moreover, on direct appeal, the appellate court determined that the jury

charge on the issue of self-defense was not erroneous. *Bales*, 2017 WL 511891, at *2.

Here, Bales has not shown that the state habeas court's adjudication of this claim—or even

the appellate court's findings—were unreasonable or contrary to federal law. As mentioned, the

trial transcript reveals that Ms. Collinsworth testified to Bales's drug use prior to the murder—an

illegal activity. He has failed to show that the jury instruction was erroneous.

## VII. Conclusion

All of Bales's claims are without merit and should be dismissed. His claims of trial court

error, prosecutorial misconduct, and ineffective assistance of counsel are without merit or refuted

by the record. More importantly, Bales wholly failed to demonstrate that the state court's

adjudication of his habeas claims were unreasonable or contrary to federal law. He has not met his

burden under the AEDPA on any of his habeas claims, and his federal petition should therefore be

denied.

## VIII. Certificate of Appealability

"A state prisoner whose petition for a writ of habeas corpus is denied by a federal district court does not enjoy an absolute right to appeal." *Buck v. Davis*, 137 S. Ct. 759, 773 (2017). Instead, under 28 U.S.C. § 2253(c)(1), he must first obtain a certificate of appealability ("COA") from a circuit justice or judge. *Id.* Although Petitioner has not yet filed a notice of appeal, the court may address whether he would be entitled to a certificate of appealability. *See Alexander v. Johnson*, 211 F.3d 895, 898 (5th Cir. 2000) (A district court may *sua sponte* rule on a certificate of appealability because "the district court that denies a petitioner relief is in the best position to determine whether the petitioner has made a substantial showing of a denial of a constitutional right on the issues before the court. Further briefing and argument on the very issues the court has just ruled on would be repetitious.").

A certificate of appealability may issue only if a petitioner has made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). To make a substantial showing, the petitioner need only show that "jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). The Supreme Court recently emphasized that the COA inquiry "is not coextensive with merits analysis" and "should be decided without 'full consideration of the factual or legal bases adduced in support of the claims.'" *Buck*, 137 S. Ct. 773 (quoting *Miller-El*, 537 U.S. at 336). Moreover, "[w]hen the district court denied relief on procedural grounds, the petitioner seeking a COA must further show that 'jurists of reason would find it debatable whether the district court was correct in its procedural ruling.'" *Rhoades v. Davis*, 852 F.3d 422, 427 (5th Cir. 2017) (quoting *Gonzalez v. Thaler*, 565 U.S. 134, 140-41 (2012)).

Here, Bales failed to present a substantial showing of a denial of a constitutional right or that the issues he has presented are debatable among jurists of reason. He also failed to demonstrate that a court could resolve the issues in a different manner or that questions exist warranting further proceedings. He is not entitled to a certificate of appealability.

RECOMMENDATION

Accordingly, it is recommended that Petitioner Bales's federal habeas corpus petition be denied and that this case be dismissed, with prejudice. It is further recommended that Bales be denied a certificate of appealability *sua sponte*.

Within fourteen (14) days after receipt of the Magistrate Judge's Report, any party may serve and file written objections to the findings and recommendations contained in the Report.

A party's failure to file written objections to the findings, conclusions and recommendations contained in this Report within fourteen days after being served with a copy shall bar that party from *de novo* review by the district judge of those findings, conclusions and recommendations and, except on grounds of plain error, from appellate review of unobjected-to factual findings and legal conclusions accepted and adopted by the district court. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996) (*en banc*).

So ORDERED and SIGNED this 7th day of February, 2023.

_____
K. NICOLE MITCHELL
UNITED STATES MAGISTRATE JUDGE